UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


VITOR KASNECI,

       Petitioner,

vs.                                                             Case No. 12-12349

Director, BUREAU OF IMMIGRATION                 HON. AVERN COHN
AND CUSTOMS ENFORCEMENT,
Director, CUSTOMS AND BORDER
PROTECTION, and DEPARTMENT
OF HOMELAND SECURITY,

       Respondents.

_____/

**MEMORANDUM AND ORDER**
**GRANTING RESPONDENTS' MOTION FOR RECONSIDERATION (Doc. 7)**

I. Introduction

      This is a habeas case under 28 U.S.C. § 2241.  Petitioner Vitor Kasneci is

challenging his detention by the United States Bureau of Immigration and Customs

Enforcement ("ICE") pending removal proceedings.  Kasneci simultaneously faces

criminal charges for the same immigration offenses which form the basis of the removal

proceedings.  On June 11, 2012, the Court granted Kasneci's petition for writ of habeas

corpus and ordered him released from custody.  ICE filed a motion for reconsideration.

The Court held a hearing on the motion June 27, 2012.  At the hearing, the Court asked

the parties for supplemental briefing to clarify the main issues as the Court saw them.

Before the Court is the government's motion for reconsideration.  The parties dispute

whether Kasneci's detention is statutorily required and is constitutional.  For the reasons

that follow, the motion for reconsideration is granted and on reconsideration the Court finds it erred in releasing Kasneci.

## II.  Background

Kasneci is a dual citizen of Albania and Israel.  On October 26, 1999, Kasneci was ordered removed from the United States, *in abstentia*, after failing to appear at a hearing in a New York immigration court.  Kasneci later applied for an immigrant visa through the United States Embassy in Tirana, Albania.  In his application, he failed to disclose that he was previously removed from the United States.  He was admitted to the United States and eventually became a lawful permanent resident ("LPR").  Since then, he has lived with his family in Michigan.

On March 27, 2006, Kasneci was convicted of third degree retail fraud in violation of M.C.L. § 750.356d(4).  On January 19, 2012, Kasneci was convicted of first degree retail fraud in violation of M.C.L. § 750.356c.

Sometime after his January 19, 2012 conviction, Kasneci returned to Albania to visit his ailing father.  When he returned to Michigan on May 15, 2012, Kasneci was arrested and detained by the government.  At the same time, he was "paroled" to the custody of the Department of Homeland Security ("DHS").

On May 16, 2012, Kasneci was issued a Form I-862 Notice to Appear ("NTA") placing him in removal proceedings and charging him with being an arriving inadmissable alien.  The NTA charged Kasneci as being removable on two grounds: (1) committing a crime involving moral turpitude, 8 U.S.C. § 1182(a)(2)(A)(i)(I); and (2) fraudulently and willfully misrepresenting a material fact in obtaining immigration benefits, 8 U.S.C. § 1182(a)(6)(C)(I).  On June 22, 2012 two additional charges were

2

added: (1) failing to be in possession of a valid entry document when applying for admission, 8 U.S.C. § 1182(a)(7)(A)(i)(I); and (2) seeking admission in the United States by application within 10 years of being ordered removed, 8 U.S.C. § 1182(a)(9)(A)(ii).  Removal proceedings were scheduled in immigration court for June 19, 2012, and later adjourned until August 22, 2012, to give Kasneci time to retain an attorney.

On May 22, 2012, the United States initiated a criminal complaint against Kasneci and his wife for failing to disclose information and making misrepresentations in procuring immigration benefits, violations of 18 U.S.C. §§ 1425, 1621, and 1015. Kasneci was ordered released on bond on May 25, 2012.  The magistrate judge found that Kasneci was not a flight risk, did not have a significant criminal record, did not pose a danger to the community, and had attended all scheduled court appearances. However, he continued in the government's custody pending the removal proceedings in immigration court.  On June 11, 2012, the Court granted Kasneci's petition for writ of habeas corpus and ordered him released.  The Court determined that Kasneci was not a flight risk and he was not subject to mandatory detention.  The day after, a grand jury indictment issued against Kasneci and his wife, charging them with knowingly making false statements under oath and withholding information to obtain immigration benefits, violations of 18 U.S.C. §§ 1425(a) and 1621(2).

III.  Legal Standards

Under the Local Rules for the Eastern District of Michigan, a motion for reconsideration may be filed within ten days after entry of a decision.  L.R. 7.1(g)(3). Generally, the Court will not grant a motion for reconsideration that merely raises the

same issues already ruled on by the Court expressly or by reasonable implication.  Id.

The moving party must show that (1) a palpable defect has misled the Court and (2)

correcting the defect will result in a different disposition of the case.  Id.  In order to

constitute a palpable defect, the error must be clear and unmistakable.  Fleck v. Titan

Tire Corp., 177 F.Supp.2d 605, 624 (E.D. Mich. 2001).

IV.  Analysis

A.  Parties' Arguments

1.  The Government

The government argues the Court should reconsider Kasneci's release because

mandatory detention is required.  Indeed, because Kasneci was not clearly and beyond

a doubt entitled to admission when he returned from Albania, the government argues

that he is subject to mandatory detention prior to his removal, under 8 U.S.C. §

1225(b)(2)(A).  Thus, the government argues that the habeas decision is wrong

because Kasneci's detention is lawful.  Although there is a possibility that Kasneci's

detention will be prolonged, the issue of release is not yet ripe.  If Kasneci's detention

actually becomes prolonged, he will be entitled to a bond hearing under Demore v. Kim,

538 U.S. 510 (2003).

Finally, the government argues that the simultaneous criminal and immigration

cases do not violate Kasneci's due process rights.

2.  Kasneci

Kasneci makes several arguments.  First, Kasneci argues that he was paroled

into the United States when he returned from Albania, and, thus, not subject to the

4

mandatory detention in 8 U.S.C. § 1225(b)(2)(A).[1]  Second, Kasneci disputes the
applicability of  8 U.S.C. § 1225(b)(2)(A) and contends that 8 U.S.C. § 1225(b)(1)
applies.  Under 8 U.S.C. § 1225(b)(1), Kasneci argues that he cannot be detained
pending removal proceedings.  Third, Kasneci states that the Court should admit him in
the United States and allow him to face removal hearings in a different posture, as
being subject to deportation.[2]  Fourth, Kasneci argues that Demore v. Kim is
inapplicable because that case dealt with 8 U.S.C. § 1226, not 8 U.S.C. § 1225.  Finally,
Kasneci argues that mandatory detention with side-by-side immigration and criminal
cases violates his Fifth Amendment right against self-incrimination.  He cannot defend
himself in one proceeding without opening himself up to liability in the other.  Moreover,
if he proceeds first with his criminal case, he will be indefinitely detained since there is
no certainty as to when the criminal case will be resolved.

B.  The Law

1. Mandatory Detention

Generally, a noncitizen seeking admission to the United States must present a
passport at an approved port of entry to apply for admission.  8 U.S.C. § 1181(a).  An
individual is an applicant for admission if he is (1) at the border seeking admission and
has not been admitted, (2) an alien brought to the United States after having been

---

[1] The Court notes the inconsistency in Kasneci's argument.  In one breath,
Kasneci avers that he was paroled into the United States.  Yet, in the very next breath,
Kasneci states that he was not paroled because he never filed an application for parole
status, and the government cannot force it on him.  Under both arguments, Kasneci
reaches the same conclusion: he is not subject to mandatory detention.

[2] The Court informed Kasneci at the June 27, 2012 hearing that it does not have
jurisdiction to enter an order admitting him into the United States.  Such a decision must
come, if at all, from the immigration court.

interdicted, or (3) a returning LPR deemed an applicant for admission under 8 U.S.C. §
1101(a)(13)(C).  See 8 U.S.C. § 1225(a)(1); see also Matter of Collado-Munoz, 21 I&N
Dec. 1061 (BIA 1997) (holding that an LPR described in 8 U.S.C. §§ 1101(a)(13)(C)(i)-
(vi) is considered to be seeking admission into the United States).  One way an LPR is
considered an applicant for admission at the border is if he "has committed an offense
identified in section 1182(a)(2) of [the Immigration and Nationality Act]. . . ."  8 U.S.C. §
1101(a)(13)(C)(v).  Offenses in section 1182(a)(2) are criminal in nature and includes
conviction of a crime involving moral turpitude, where the noncitizen has not received a
waiver or relief from removal.  8 U.S.C. § 1182(a)(2)(A)(i)(I).

An immigration officer must inspect all applicants for admission at the border who
are noncitizens.  8 U.S.C. § 1225(a)(3).  The burden is on the arriving noncitizen
seeking admission to establish "clearly and beyond a doubt" that he is "entitled to be
admitted."  8 U.S.C. § 1225(b)(2)(A).  Generally, DHS has the burden of proof to
establish inadmissability of a returning LPR.  See 8 U.S.C. § 1229(c)(3)(A).  However,
an LPR is treated like any other alien applicant for admission when he has committed
an offense enumerated in section 1182(a)(2).  See 8 U.S.C. § 1229(c)(2).  If it is not
established clearly and beyond a doubt that the alien is entitled to admission, "the alien
shall be detained for a proceeding under section 1229 of [the Immigration and
Nationality Act]."  8 U.S.C. § 1225(b)(2)(A).  If an alien is verified as an LPR, the only
way to terminate such status is through exclusion, deportation, or removal proceedings
which can be initiated by the immigration officer.  8 C.F.R. § 235.3(5)(ii).

There are two exceptions to mandatory detention under 8 U.S.C. § 1229; first, for
noncitizens that are stowaways; second, for crewmen seeking asylum or who

6

demonstrate a credible fear of persecution.  8 U.S.C. §§ 1225(a)(2), (3), (b)(2)(B).  In addition, the Attorney General in his sole discretion can "parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States. . . ."  8 U.S.C. § 1182(d)(5)(A).  "[P]arole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled" and his case will continue in the same manner as any other applicant for admission to the United States.  Id.

Mandatory detention is prescribed for certain noncitizens seeking admission into the United States, see 8 U.S.C. § 1225(b)(2), and noncitizens apprehended in the United States, see 8 U.S.C. § 1226(c).  The Supreme Court in Demore v. Kim, 538 U.S. 510 (2003), upheld the constitutionality of the mandatory detention provision in section 1226(c).  The Court rejected a due process challenge to section 1226(c) and held that an individualized bond hearing is not required.  Id. at 531.  Further, the Supreme Court distinguished Zadvydas v. Davis, 533 U.S. 678 (2001), which held that post-removal detention is subject to a reasonableness limitation, with a six-month period being presumptively valid.  The Demore Court reasoned that Zadvydas was different because (1) in Zadvydas, removal was ordered but no longer practicable, and (2) post-removal detention is "indefinite" and "potentially permanent," while pre-removal detention has an "obvious termination point" and is "of a much shorter duration."  538 U.S. at 527-29. The Supreme Court reasoned that, "detention necessarily serves the purpose of

7

preventing deportable criminal aliens from fleeing prior to or during their removal proceedings." Id. at 528.  In concurring opinion, Justice Kennedy stated that an LPR "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532.

The Sixth Circuit addressed the propriety of pre-removal detention of aliens in Ly v. Hansen, 351 F.3d 263 (6th Cir. 2003).  In Ly, the court of appeals held that pre-removal detention is permissible "for a time reasonably required to complete removal proceedings in a timely manner." Id. at 268.  However, "[i]f the process takes an unreasonably long time, the detainee may seek relief in habeas proceedings." Id. Although the court of appeals rejected a bright line time limitation for determining the lawfulness of detention prior to removal, it articulated a rule of reasonableness.  Id. at 273.

> Our rule requires the INS to act reasonably: when actual removal is not reasonably foreseeable, criminal aliens may not be detained beyond a reasonable period required to conclude removability proceedings without a government showing of a "strong special justification," constituting more than a threat to the community, that overbalances the alien's liberty interest.  Although it lacks a bright line, this rule is administrable by courts hearing habeas petitions arising from mandatory detention under § 236.

Id. (internal citations omitted).

## 2. Parallel Criminal and Immigration Proceedings

It is well-settled that the government can pursue simultaneous criminal and civil proceedings without violating due process.  United States v. Kordel, 397 U.S. 1, 11 (1970).  In Kordel, the Supreme Court stated that the government does not have to

choose between seeking civil versus criminal relief, and it need not defer civil proceedings pending the outcome of a criminal trial.  Id.  However, the government cannot bring a civil action solely to obtain evidence for its criminal prosecution.  Id. at 12.  In addition, special circumstances may call into question the constitutionality and propriety of the criminal prosecution.  Id. (collecting cases where federal courts have deferred civil proceedings pending the completion of parallel criminal prosecution). When special circumstances require, the civil proceeding may be stayed until resolution of the criminal matter.

C.  Application

1.

Kasneci challenges his continued detention pending removal as violative of his constitutional rights.  The government argues that Kasneci is subject to mandatory detention, and, therefore, the detention is lawful.

This case presents a unique issue that has never squarely been addressed by the Sixth Circuit or the Supreme Court.  Kasneci is being detained pending his removal proceedings and ICE simultaneously initiated criminal charges against him.  In his criminal case, he has been given bond.

As a preliminary matter, the Court finds that 8 U.S.C. § 1225(b)(2)(A) applies to Kasneci rather than 8 U.S.C. § 1225(b)(1).  Kasneci is considered an "applicant for admission."  Section 1225(a)(1) makes clear that a returning LPR is deemed an applicant for admission if any of the grounds in section 1101(a)(13)(C)(i)-(vi) is satisfied. Under section 1101(a)(13)(C)(v), an LPR is considered an applicant for admission if he "has committed an offense identified in section 1182(a)(2). . . ."  Kasneci is an LPR who

9

has been convicted of a crime involving moral turpitude, an offense identified in section 1182(a)(2)(A)(i)(I).  As such, section 1225(b)(2)(A) is applicable to Kasneci.

Recognizing that Kasneci is an LPR who was seeking admission into the United States having committed a crime involving moral turpitude (first degree retail fraud), the government has authority to detain him under 8 U.S.C. § 1225(b)(2)(A).  Kasneci will be detained for a defined time period: the period of his removal proceedings.  Unlike Zadvydas, Kasneci's detention prior to his removal is more limited in nature.  In Zadvydas, a removal determination was already made, and Zadvydas continued to be detained even though it was uncertain whether he would ever be deported.  Although Kasneci's criminal case may delay the immigration proceeding, there is still an "obvious termination point" to the proceedings, and his removal proceeding will necessarily move forward until a decision is made.  See Demore, 538 U.S. at 529.

The Supreme Court was clear in Demore that pre-removal and post-removal situations were different.  Id. at 531.  The Court reasoned that, "[d]etention during removal proceedings is a constitutionally permissible part of that process."  Id. (citing Wong Wing v. United States, 163 U.S. 228, 235 (1896); Carlson v. Landon, 342 U.S. 524 (1952); Reno v. Flores, 507 U.S. 292 (1993)).

Here, Kasneci's detention has not reached an unreasonable period of time which would be impermissible under Ly.  He was in custody only for twenty-seven days before being released.  If Kasneci's detention actually becomes prolonged, he may be entitled to an individualized bond hearing.  See, e.g. Bautista v. Sabol, 2012 WL 1899671, at *4 (M.D.Pa. May 24, 2012) (analyzing pre-removal detention under §1225(b)(2)(A)); see also Diouf v. Napolitano, 634 F.3d 1081 (9th Cir. 2011) (holding that alien subject to

10

prolonged detention is entitled to bond hearing and release unless government can prove alien poses flight risk or danger to community).  However, unlike Ly, where the alien was detained for one and one-half years, Kasneci was only detained for twenty-seven days.  "The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability."  Ly v. Hansen, 351 F.3d 263, 272 (6th Cir. 2003).

2.

Kasneci cites the decision in Cuello v. Adduci, No. 10-13641, 2010 WL 4226688 (E.D. Mich. Oct. 21, 2010), to argue that he should not be detained.  The facts in Cuello, however, are materially different than here.  In Cuello, the petitioner was detained for thirteen months before the court granted habeas relief.  Id. at *1.  After he was ordered removed, the petitioner obtained a stay of removal pending appeal.  Id. at *2.  The court held that the petitioner was subject to mandatory detention under 8 U.S.C. § 1226(a), but "his continued detention and lack of meaningful custody review d[id] not comport with due process."  Id. at 5.  Thus, the court stated that if the petitioner did not receive a bond hearing, the government was required to release him.  Id.  In this case, Kasneci's detention is proper.  Although the Supreme Court and court of appeals have not provided a rigid time period in determining the reasonableness of detention, case law does not support Kasneci's position that twenty-seven days in custody violates due process.[3]

_____

[3] The Court recognizes the hardship the law works on Kasneci in this case. Congress' purpose in providing for mandatory pre-removal detention was to ensure deportable criminal aliens would attend removal hearings and depart the United States after an appropriate order.  In this case, however, there have been multiple findings that Kasneci is not a flight risk.  He has attended all proceedings and it does not make sense

3.

In sum, Kasneci was not detained for an unreasonable period of time.  He is scheduled for a hearing in front of an immigration judge on August 22, 2012.  In the criminal case, a pretrial conference is scheduled for September 19, 2012.  Although Kasneci must defend himself in both the criminal and immigration cases, both cases are proceeding in a timely manner.  If the process becomes delayed and Kasneci's detention becomes unreasonable, he may be entitled to habeas relief under Ly v. Hansen.  At this point, however, detention is mandatory.

## V. Conclusion

Accordingly, because the Court erred in releasing Kasneci, the government's motion to dismiss the habeas petition is GRANTED.  Kasneci must surrender himself. The dismissal, however, is without prejudice to the filing of another habeas petition in the event that Kasneci believes his detention has become unreasonable.

SO ORDERED.

Dated:  August 23, 2012                    S/Avern Cohn
                                           AVERN COHN
                                           UNITED STATES DISTRICT JUDGE

---

to keep him in jail.  However, Congress has removed from the jurisdiction of immigration judges the ability to provide individualized bond determinations in certain cases.  This inevitably means that some criminal aliens who do not pose a flight risk, such as Kasneci, will be mandatorily detained even though detention serves no legitimate purpose.  The purposes of mandatory detention are not furthered by Kasneci's detention.

12-12349 Kasneci v. Director, Bureau of
Immigration and Customs Enforcement
Memorandum & Order Granting Respondent's Motion for Reconsideration

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 23, 2012, by electronic and/or ordinary mail.


 S/Julie Owens_____
Case Manager, (313) 234-5160

13